UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| George Tiaffay,<br><br>    Petitioner<br><br>v.<br><br>Calvin Johnson, et al.,<br><br>    Respondents | Case No.: 2:20-cv-02257-JAD-EJY<br><br>**Order Granting in Part<br>Motion to Dismiss and Giving Petitioner<br>Until December 28, 2023, to Advise the<br>Court How He Wishes to Proceed with this<br>Mixed Petition**<br><br>[ECF No. 69] |

    Nevada state prisoner George Tiaffay brings this federal habeas petition under 28 U.S.C. § 2254 to challenge his state-court convictions related to the 2012 murder-for-hire of his wife. In a four-count counseled petition, Tiaffay alleges ineffective assistance of counsel and that he was incompetent to stand trial.[1] Respondents move to dismiss his claims as unexhausted.[2] Because I find that Tiaffay's incompetency claim is procedurally defaulted and the first of his three ineffective-assistance claims is unexhausted, I grant the motion in part and give him until December 28, 2023, to advise the court how he wants to proceed with this mixed petition.

**Background**

    Tiaffay solicited Noel Scott Stevens to kill his wife, Shauna Tiaffay.[3] The couple was divorcing, living in separate residences, and sharing custody of their eight-year-old daughter at

---

[1] ECF No. 31.
[2] ECF No. 69.
[3] ECF No. 31 at 2.

the time.[4] Tiaffay alleges that in the months leading up to Shauna's murder, he was in a psychiatrically altered state and was experiencing distorted thoughts and delusions.[5]

When soliciting Stevens to kill Shauna, Tiaffay discussed what type of murder weapon Stevens should use and whether he should commit the murder at her apartment or outside of the Palms Casino where Shauna worked.[6] Stevens burglarized Shauna's apartment weeks before the murder.[7] And after killing Shauna in her home, Stevens took a few of her purses, one of which had Palms casino chips she received as tips while working.[8]

Tiaffay alleges that, after his arrest, his religious-themed delusions and behavior intensified.[9] He sought out church services while in jail and wrote religion-themed letters to friends and family.[10] He further asserts that he had a delusional belief that God had instructed him to trust his trial attorney and acquiesce to his attorney's strategic decisions.[11]

The Eighth Judicial District Court for Clark County, Nevada entered a judgment of conviction and sentenced Tiaffay in the aggregate to life without parole plus a consecutive term of 32.3 years to 81 years, after the jury returned a guilty verdict on charges of first-degree murder with use a of a deadly weapon, conspiracy to commit murder, possession of burglary tools, conspiracy to commit burglary, conspiracy to commit robbery, and burglary while in

---

[4] *Id.*
[5] *Id.*
[6] *Id.* at 10.
[7] *Id.*
[8] *Id.* at 11.
[9] *Id.* at 14.
[10] *Id.* at 14–15.
[11] *Id.* at 21.

possession of a deadly weapon.[12] Tiaffay appealed, but the Nevada Court of Appeals affirmed.[13] He then filed a state postconviction habeas corpus petition, which was denied after an evidentiary hearing.[14] The Nevada Supreme Court affirmed that denial of habeas relief.[15]

Tiaffay dispatched his pro se federal habeas corpus petition in December 2020.[16] Counsel was appointed six months later, and Tiaffay filed counseled first and second amended petitions.[17] In his operative second amended petition he asserts four grounds for relief:

> 1. Tiaffay's Fifth, Sixth, and Fourteenth Amendment rights were violated because he was incompetent to stand trial;
>
> 2. His trial counsel provided constitutionally ineffective assistance by failing to request a competency evaluation;
>
> 3. His trial counsel provided constitutionally ineffective assistance by failing to pursue an insanity defense;
>
> 4. His trial counsel provided constitutionally ineffective assistance by failing to present additional mitigation evidence at the penalty phase of trial.[18]

Respondents move to dismiss Tiaffay's petition, arguing that all claims are unexhausted.[19] Tiaffay opposes the motion, arguing that his ineffective-assistance claims are actually exhausted and that his incompetency claim is technically exhausted and his procedural default is excused because he can show cause, prejudice, and actual innocence.[20]

---

[12] ECF No. 20-2.
[13] ECF No. 20-5.
[14] ECF Nos. 20-9, 20-10, 64-11.
[15] ECF No. 20-16.
[16] ECF No. 1-2.
[17] ECF Nos. 20, 31.
[18] ECF No. 31.
[19] ECF No. 69.
[20] ECF No. 72.

## Discussion

**I.  Tiaffay exhausted his ineffective-assistance claims in grounds 3 and 4, but not the one in ground 2.**

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts.[21] This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees.[22] "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts."[23] To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available.[24]

A properly exhausted claim "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."[25] A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based.[26] "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already

---

[21] 28 U.S.C. § 2254(b)(1)(A).

[22] *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

[23] *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)).

[24] *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

[25] *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

[26] *Bland v. California Dept. of Corr.*, 20 F.3d 1469, 1473 (9th Cir. 1994).

considered by the state courts,' or 'place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'"[27]

### A. Tiaffay did not exhaust his ineffective-assistance claim in ground 2.

In ground 2, Tiaffay alleges that his trial attorney rendered ineffective assistance because he failed to request a competency evaluation based on Tiaffay's delusional belief that God wanted him to trust his attorney in material aspects of the representation.[28] Respondents argue that ground 2 is unexhausted because Tiaffay did not fairly present this ineffective assistance of counsel claim to the state appellate court.[29] Tiaffay asserts that he raised this claim in his *pro se* state habeas petition as well as his supplemental state habeas petition and that he referred to a competency evaluation performed by Dr. Sussman in his postconviction appeal brief.[30]

Although Tiaffay alleges in his postconviction appeal brief that trial counsel failed to investigate his mental health to present as a defense at trial and as mitigation at sentencing, he did not allege an ineffective assistance of counsel claim based on trial counsel's failure to determine Tiaffay's competency to stand trial. So Tiaffay did not fairly present this claim to the Nevada appellate court, and ground 2 is thus unexhausted.

### B. Ground 3 is exhausted.

In Ground 3, Tiaffay alleges that trial counsel rendered ineffective assistance for failure to pursue an insanity defense premised on Tiaffay's delusions causing him to believe God

---

[27] *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), and *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)).
[28] ECF No. 31 at 22–23.
[29] ECF No. 69 at 4–5.
[30] ECF No. 72 at 18–21.

5

instructed him to kill Shauna.[31] Respondents contend that Tiaffay argued that counsel failed to present evidence of Tiaffay's mental state to mitigate his conviction in his postconviction appeal and now raises a different claim that counsel failed to present an insanity defense.[32] Ground 3, however, is exhausted as this ineffective assistance of counsel claim was fairly presented to the state appellate court and the state appellate court reached a decision on the merits of the claim.[33] So I deny the motion to dismiss ground 3.

### C. Ground 4 is exhausted.

In ground 4, Tiaffay alleges that trial counsel rendered ineffective assistance for failure to present mitigation evidence of Tiaffay's delusional beliefs at the penalty phase of trial.[34] Respondents' assertion that Tiaffay did not present this claim to the state appellate court fails. Tiaffay sufficiently raised his ineffective-assistance-of-counsel claim asserted in Ground 4 on postconviction appeal to the state appellate court to satisfy exhaustion. So I deny the motion to dismiss ground 4.

## II. Ground 1 is technically exhausted, and Tiaffay cannot overcome his procedural default.

In ground 1, Tiaffay alleges that he was incompetent to stand trial, and he concedes that this claim was not fairly presented to the state court.[35] But he avers that this claim is technically exhausted because it is procedurally defaulted, but presents the following three arguments: (1) the procedural-default doctrine shouldn't apply to substantive competency claims; (2) he can

---

[31] ECF No. 31 at 24–25.
[32] ECF No. 75 at 14.
[33] ECF No. 14-17 at 3.
[34] ECF No. 31 at 26.
[35] *Id*. at 21.

6

demonstrate cause and prejudice to overcome procedural default; and (3) he can prove actual innocence.[36]  Unfortunately for Tiaffay, none of these theories saves this claim from dismissal.

### A. Ground 1 is subject to the procedural-default doctrine.

"Procedural default" refers to the situation in which a petitioner presented a claim to the state courts, but the state courts disposed of the claim on procedural grounds instead of on its merits.[37]  As the Supreme Court explained in *Coleman v. Thompson*, a procedural default prevents the federal court from reviewing a habeas claim unless the petitioner can show good cause plus actual prejudice or a fundamental miscarriage of justice.[38]  Tiaffay argues that the procedural-default doctrine shouldn't apply to substantive competency claims because the courts of appeal are divided on the issue.[39]  The Ninth Circuit, however, has held that procedural default applies to claims of mental incompetence.[40]  Because I am bound by that decision, Tiaffay's argument fails, and this claim is subject to the procedural-default doctrine.

### B. Tiaffay fails to demonstrate cause and prejudice to excuse his procedural default on ground 1.

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.[41]  That external impediment must have prevented the petitioner from raising the

---

[36] ECF No. 72 at 3–17.
[37] *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).
[38] *Id*. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).
[39] ECF No. 72 at 4.  *See United States v. Basham*, 789 F.3d 358, 379 n.10 (4th Cir. 2015).
[40] *Martinez-Villareal v. Lewis*, 80 F.3d 1301 (9th Cir. 1996).
[41] *Murray*, 477 U.S. at 488 (emphasis added).

7

claim.[42]  The procedural-default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases.[43]

Tiaffay argues that he can overcome the default on ground 1 based on his counsel's failure to effectively litigate the underlying competency issue.[44]  For a claim of ineffective assistance of counsel (IAC) to function as cause to excuse a procedural default, the claim must be exhausted before the state courts as an independent claim.[45]  But here, Tiaffay's IAC claim based on trial counsel's failure to request a competency evaluation is unexhausted, so Tiaffay cannot satisfy this cause requirement.  Because Tiaffay cannot show cause to overcome this procedural default, I need not reach his assertions of prejudice.[46]

### C.   Tiaffay also has not established actual innocence to excuse his procedural default on ground 1.

Tiaffay alternatively contends that he can overcome this default with a showing of actual innocence.  A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to the consideration of the merits of their constitutional claims.[47]  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations."[48]  "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the

---

[42] *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).
[43] *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003).
[44] ECF No. 72 at 6.
[45] *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).
[46] *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).
[47] *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995).
[48] *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted).

outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."[49] However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare."[50]

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"[51] Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]."[52] The petitioner must establish factual innocence of the crime, and not mere legal insufficiency.[53] To demonstrate actual innocence to overcome a procedural bar, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."[54]

### 1. *Tiaffay argues actual innocence based on a new, deific-decree defense.*

Tiaffay theorizes that he was not guilty by reason of insanity because of his delusional belief that God instructed him to kill Shauna, and this demonstrates his actual innocence under Nevada law.[55] His new, God-told-me-to-kill theory, commonly known as the "deific-decree

---

[49] *Schlup*, 513 U.S. at 316.

[50] *McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

[51] *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316).

[52] *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327–28).

[53] *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003).

[54] *Schlup*, 513 U.S. at 324.

[55] ECF No. 72 at 10.

9

defense," is grounded in the opinions of Dr. Sussman, who was hired by Tiaffay's state-habeas counsel, conducted a psychiatric examination of Tiaffay, and testified at his state habeas evidentiary hearing. Dr. Sussman opined that "[Tiaffay] likely decompensated between 2010 . . . and 2012" due to his "medication regimen," and "his actions leading up to the murder were out of character and attributable to psychiatric decompensation."[56] He explained that "[p]ost-traumatic stress of physical abuse in childhood could have precipitated an early propensity for quasi-psychotic 'intense communications with God' that intensified into auditory hallucinations infused with both God and evil voices in [the] 2010 to 2012 period."[57]

Dr. Sussman testified that Tiaffay had a "firm false fixed delusion [that] God was talking to him and there was both a God's voice and an evil voice . . . telling him that he had to do something to his wife"—a "particularly horrible vicious act in order to prevent [Shauna] from taking his daughter astray."[58] Tiaffay told Dr. Sussman that he felt he was incompetent at the time of trial because he thought God was telling him "to trust my lawyer when I should have been telling the truth from the get go."[59] Dr. Sussman opined that Tiaffay was likely procedurally incompetent at the time of trial under the standard articulated in *Dusky v. United States*.[60]

Tiaffay further asserts that his own writings, such as letters to friends, support Dr. Sussman's conclusion.[61] Those letters describe his relationship with God and that God was

---

[56] *Id*. at 13. *See also* ECF No. 34-8.
[57] *Id*. at 10.
[58] ECF No. 64-11 at 8–15.
[59] ECF No. 34-8 at 5.
[60] *Id*. at 9–10. *See Dusky v. United States*, 362 U.S. 402 (1960).
[61] ECF No. 72 at 13.

defense," is grounded in the opinions of Dr. Sussman, who was hired by Tiaffay's state-habeas counsel, conducted a psychiatric examination of Tiaffay, and testified at his state habeas evidentiary hearing. Dr. Sussman opined that "[Tiaffay] likely decompensated between 2010 . . . and 2012" due to his "medication regimen," and "his actions leading up to the murder were out of character and attributable to psychiatric decompensation."[56] He explained that "[p]ost-traumatic stress of physical abuse in childhood could have precipitated an early propensity for quasi-psychotic 'intense communications with God' that intensified into auditory hallucinations infused with both God and evil voices in [the] 2010 to 2012 period."[57]

Dr. Sussman testified that Tiaffay had a "firm false fixed delusion [that] God was talking to him and there was both a God's voice and an evil voice . . . telling him that he had to do something to his wife"—a "particularly horrible vicious act in order to prevent [Shauna] from taking his daughter astray."[58] Tiaffay told Dr. Sussman that he felt he was incompetent at the time of trial because he thought God was telling him "to trust my lawyer when I should have been telling the truth from the get go."[59] Dr. Sussman opined that Tiaffay was likely procedurally incompetent at the time of trial under the standard articulated in *Dusky v. United States*.[60]

Tiaffay further asserts that his own writings, such as letters to friends, support Dr. Sussman's conclusion.[61] Those letters describe his relationship with God and that God was

---

[56] *Id*. at 13. *See also* ECF No. 34-8.
[57] *Id*. at 10.
[58] ECF No. 64-11 at 8–15.
[59] ECF No. 34-8 at 5.
[60] *Id*. at 9–10. *See Dusky v. United States*, 362 U.S. 402 (1960).
[61] ECF No. 72 at 13.

directing him to put blind faith in his attorney.[62] Tiaffay contends that a new medication regimen that had serious psychiatric side effects, anxiety regarding his daughter's well-being, financial struggles, sleep disturbances, and his struggle with his divorce contributed to his psychotic break.[63] All of this evidence, he contends, shows that he was not guilty by reason of insanity under Nevada law.

### 2. But Tiaffay's deific-decree defense fails under Nevada law.

This new deific-defense theory fails to establish actual innocence under Nevada law. Criminal defendants are presumed to be legally sane, so to prevail on an insanity defense, a defendant must overcome that presumption with a preponderance of the evidence.[64] Nevada recognizes the defense of legal insanity and applies the *M'Naghten* rule,[65] under which the jury determines whether the defendant "knew the nature and quality of [his] acts, had the capacity to determine right from wrong or knew whether [he] was doing wrong when [he] committed the crime."[66] "To qualify as being legally insane, a defendant must be in a delusional state such that he cannot know or understand the nature and capacity of his act, or his delusion must be such that he cannot appreciate the wrongfulness of his act, that is, that the act is not authorized by law."[67]

---

[62] *Id*.

[63] *Id*. at 14.

[64] *See Williams v. State*, 885 P.2d 536, 538 (Nev. 1994).

[65] *See, e.g., Miller v. State*, 911 P.2d 1183, 1185 (Nev. 1996).

[66] *See Clark v. State*, 588 P.2d 1027, 1029 (Nev. 1979).

[67] *Finger v. State*, 27 P.3d 66, 84–85 (Nev. 2001).

"Mental health problems" alone do not necessarily satisfy the *M'Naghten* test.[68] And the Nevada Supreme Court has rejected the notion that the very God-told-me-to-kill excuse that Tiaffay now advances can meet the *M'Naghten* standard. In discussing the history of the insanity defense in *Finger v. State*, the Court explained that, for example, if "a person was under a delusion that God wanted certain people killed and, based upon hearing the voice of God, that individual immediately began killing people around them," then that person would be legally insane under a different test, but not the *M'Naghten* standard.[69] Despite this on-point dicta in *Finger*, Tiaffay argues that a petitioner acting under the delusional belief that God is ordering him to commit a crime meets the *M'Naghten* standard, and he asserts that other jurisdictions apply the *M'Naghten* standard and also recognize a deific-decree insanity defense.[70]

Even if the Nevada Supreme Court had not expressly noted its skepticism of the deific-decree defense in *Finger*, Tiaffay's actual-innocence claim fails because he cannot meet the *M'Naghten* standard on this record. The Ninth Circuit has observed that "it is clear that the mere presentation of new psychological evaluations . . . does not constitute a colorable showing of actual innocence."[71] "'Because psychiatrists [let alone psychologists] disagree widely and frequently on what constitutes mental illness,' we have observed that evaluations . . . merit little weight on habeas review because 'a defendant could . . . always provide a showing of factual innocence by hiring psychiatric experts who would reach a favorable conclusion.'"[72] The

---

[68] *Id*. at 72.

[69] *Id*. at 74.

[70] ECF No. 72 at 12.

[71] *Griffin v. Johnson*, 350 F.3d 956, 965 (9th Cir. 2003) (quoting *Harris v. Vasquez*, 949 F.2d 1497, 1516 (9th Cir. 1990)), *cert. denied*, 541 U.S. 998 (2004).

[72] *Griffin*, 350 F.3d at 965 (quoting *Harris*, 949 F.3d at 1515).

evidence that Tiaffay was insane because he experienced deific delusions, including Dr. Sussman's opinions, is precisely the type of evidence that the Ninth Circuit has held insufficient to make a colorable showing of actual innocence.

Plus, when considered in the light of the evidence at trial—which was heavy on premeditation, planning, and cover up—this newly presented evidence would not lead a reasonable juror to conclude that Tiaffay was not guilty by reason of insanity.[73] Hired-killer Stevens testified at trial that he'd met Tiaffay while he spent time at his sister's house, who lived near Tiaffay.[74] Stevens stayed with Tiaffay for a couple of days and observed Tiaffay and Shauna arguing.[75] Tiaffay and Shuana were getting a divorce, and Tiaffay offered Stevens $1,000 to kill Shauna.[76] Stevens refused because he did not think Tiaffay was being serious, and then Tiaffay sweetened the pot to $5,000.[77] Stevens said that he and Tiaffay discussed the murder on several occasions, including details like where and how to carry it out.[78]

Stevens used a hammer to murder Shauna, and it was Tiaffay who dictated that Stevens use a hammer that was lightweight, rather than the sledgehammer that Stevens initially suggested, because it could be swung faster.[79] Testimony of the medical examiner regarding

---

[73] *See Blake v. State*, 121 P.3d 567, 576 (Nev. 2005) (finding overwhelming evidence against a finding of insanity where the defendant killed victims after a period of reflection, fled, disposed of the murder weapon, developed an alibi, and lied to hospital personnel when seeking medical assistance).

[74] ECF No. 56-1 at 180–83.

[75] *Id*. at 188.

[76] *Id*. at 192–93.

[77] *Id*. at 193–94, 198.

[78] *Id*. at 201–205.

[79] *Id*. at 207.

Shauna's autopsy findings showed that Shauna's cause of death was multiple blunt-force injuries due to assault, as she had skull fractures and multiple fractures to the fingers in her right hand.[80]

Tiaffay gave Stevens a key to Shauna's apartment.[81] Tiaffay continued to communicate with Stevens days before the murder.[82] He informed Stevens that Shauna found her once-missing garage-door opener, which would change her entry point into her home, that Tiaffay was on good terms with Shauna to decrease the likelihood of Tiaffay becoming a suspect, that Shauna would wake up the neighbors when she came home because she slammed the door and the walls are thin, and for Stevens to make the murder look like a robbery.[83]

William Pennix, an acquaintance of Stevens, testified that Stevens confessed to him that he murdered a woman.[84] Stevens previously told Pennix about a man that would give him odd jobs, that man gave him a key to Shauna's apartment and that he'd received payment to kill her.[85] Pennix observed Stevens receiving numerous phone calls from that man, and Pennix reported what Stevens told him to the police.[86] Pennix also identified the house where the man who gave Stevens odd jobs lived to police.[87]

Tiaffay's post-murder behavior also strongly betrayed his innocence. After the police called Tiaffay's family and informed them that Tiaffay would be arrested for murder, Tiaffay

---

[80] ECF No. 56-1 at 12–14.
[81] *Id*. at 212.
[82] *Id*. at 221.
[83] *Id*. at 221, 224, 226, 231.
[84] ECF No. 56-1 at 31–32, 44.
[85] *Id*.
[86] *Id*. 45–47, 51.
[87] *Id*. at 53.

14

drove his truck into a concrete barrier at a high speed.[88] Tiaffay's phone records showed that he had called Stevens 87 times in the month that Shauna was murdered, but he had deleted Stevens's contact information from his phone.[89] Numerous text messages were also deleted.[90]

In short, the newly presented evidence does not undermine the State's case such that it is more likely than not that no reasonable juror would have convicted Tiaffay. He thus has not made a convincing showing of actual innocence to overcome the procedural default on ground 1. So I dismiss ground 1 as procedurally defaulted.[91]

### III.    Tiaffay's options for this mixed petition.

Because Tiaffay's petition is a mixed one, containing both exhausted and unexhausted claims, he must now choose one of three paths forward and advise the court how he will proceed:

1. He can advise the court that he is voluntarily abandoning his unexhausted claims and will proceed on the exhausted claims only;

2. He can advise the court that he will return to state court to exhaust his unexhausted claims, in which case this federal habeas petition will be denied without prejudice; or

3. He can file a motion asking the court to hold his exhausted claims in abeyance while he returns to state court to exhaust his unexhausted claims.[92]

---

[88] ECF No. 58-1 at 18.

[89] ECF No. 55-1 at 55–56.

[90] *Id*. at 55.

[91] Tiaffay also requests an evidentiary hearing with respect to his contention that he can overcome the procedural default of Ground 1 by a showing of actual innocence. *See* ECF No. 72 at n.2. As stated above, Tiaffay's proffered evidence regarding insanity does not establish his actual innocence under *Schlup*. I find that an evidentiary hearing is unwarranted for this issue.

[92] *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).

Tiaffay is cautioned that a stay and abeyance (option 3) is available only in limited circumstances and only if he shows good cause for his failure to first exhaust ground 2 in state court and that it is not plainly meritless.[93] Respondents would then have a chance to respond to his motion. If petitioner fails to choose one of these three options or seek other appropriate relief by December 28, 2023, this federal habeas petition will be dismissed without prejudice as a mixed petition.

## Conclusion

IT IS THEREFORE ORDERED that respondents' motion to dismiss **[ECF No. 69] is GRANTED in part**. **Ground 1 is dismissed** as procedurally defaulted. Ground 2 is deemed unexhausted.

IT IS FURTHER ORDERED that **Tiaffay has until December 28, 2023, to do one of the following three things**: (1) seek to voluntarily dismiss his unexhausted claim in ground 2 and proceed only on grounds 3 and 4; (2) seek to voluntarily dismiss the entire petition without prejudice so that he may return to state court to exhaust ground 2, or otherwise advise the court that he intends to return to state court to exhaust ground 2, in which case this action will be dismissed in its entirety and without prejudice; or (3) move for other appropriate relief, such as a stay and abeyance asking to hold grounds 3 and 4 in abeyance while he returns to state court to exhaust ground 2.

---

[93] *Rhines*, 544 U.S. at 277 (stating that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. [And] even if a petitioner [shows good cause], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

**Failure to timely comply with this order will result in the dismissal of this mixed petition without further advanced notice.**

_____
U.S. District Judge Jennifer A. Dorsey
November 28, 2023